L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Frederick J. Klorczyk III (State Bar No. 320783)
**BURSOR & FISHER, P.A.**
1990 North California Boulevard, Suite 940
Walnut Creek, California  94596
Tel: (925) 300-4455
ltfisher@bursor.com
jsmith@bursor.com
fklorczyk@bursor.com

W. Daniel "Dee" Miles, III*
H. Clay Barnett, III*
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street Montgomery, Alabama 36104
Tel: (334) 269-2343
dee.miles@beasleyallen.com
clay.barnett@beasleyallen.com

Adam J. Levitt*
John E. Tangren*
Daniel R. Ferri*
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Tel: (312) 214-7900
alevitt@dlcfirm.com
jtangren@dlcfirm.com
dferri@dlcfirm.com

Benjamin L. Bailey*
Jonathan D. Boggs*
Michael L. Murphy*
**BAILEY GLASSER LLP**
209 Capitol Street
Charleston, West Virginia  25301
Tel: (304) 345-6555
bbailey@baileyglasser.com
jboggs@baileyglasser.com
mmurphy@baileyglasser.com

*Motions to appear *pro hac vice* to be filed

Attorneys for Plaintiffs (*additional counsel appear on signature page*)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| VAUGHN KERKORIAN and DAVID TURNER, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>               v.<br><br>NISSAN NORTH AMERICA, INC. AND NISSAN MOTOR CO., LTD.,<br><br>          Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Vaughn Kerkorian and David Turner ("Plaintiffs"), individually and on behalf of the other members of the below-defined nationwide and statewide classes they respectively seek to represent (collectively, the "Class"), hereby allege against Nissan North America, Inc. ("Nissan NA") and Nissan

Motor Co., Ltd. ("Nissan MC") (collectively, "Defendants" or "Nissan"), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon investigation, as follows:

## I.   **Nature of the Case**

1.     Plaintiffs bring this case, seeking damages and equitable relief, individually and on behalf of the other Class members, each of whom purchased or leased one or more 2015 or newer Nissan vehicles equipped with Forward Emergency Braking or Automatic Emergency Braking technology (the "Class Vehicles").

2.     Each of the Class Vehicles contains a defective emergency braking system that exposes drivers and passengers to the risk of sudden and unexpected collision.

3.     As advertised by Nissan, its Forward Emergency Braking/Automatic Emergency Braking technology (herein referred to as the "Emergency Braking System") uses radar and cameras to detect the possibility of a collision with vehicles, pedestrians, and fixed or moving objects.  When functioning as intended, the Emergency Braking System will automatically engage the vehicle's brakes if it detects an imminent collision or obstacle impact, causing the vehicle to decelerate and stop.

4.     Nissan first offered its Emergency Braking System on the model year 2015 Nissan Murano under the name "Forward Emergency Braking."  In recent years, in an effort to appear to be at the forefront of emerging autonomous driving technology, it has expanded that technology to other models and re-branded it as "Automatic Emergency Braking," one component within its array of "Intelligent Safety Shield Technologies."  Beginning with model year 2018 vehicles, Nissan made what is now called Automatic Emergency Braking a standard feature on its Rogue, Rogue Sport, Murano, Altima, Maxima, Armada, Pathfinder, Leaf, and Sentra vehicles.

5.     Nissan's Emergency Braking System, however, is not road ready.  It suffers from a serious defect, wherein the Emergency Braking System engages suddenly and unexpectedly even when no collision is imminent, no obstacles are within striking distance and without need for driver brake application.  This defect is referred to herein as the "Emergency Braking Defect".

6.     Due to the Emergency Braking Defect, owners and lessees of Class Vehicles have experienced sudden and unexpected braking on railroad tracks, on bridges, in intersections, in parking

garages and other dangerous driving situations that have placed them at serious and unreasonable risk of side-on or rear-end collision.

7. The Emergency Braking Defect is a uniform defect, existing within all Class Vehicles from the time of their production, and is often experienced at extremely low mileages, within Nissan's 36,000-mile limited warranty period.

8. Nissan knew of the Emergency Braking Defect prior to the sale or lease of the Class Vehicles. This is evidenced by the reports of owners and lessees complaining about the Emergency Braking Defect to Nissan and Nissan dealers, as well as the multitude of consumer complaints collected by the National Highway Traffic Safety Administration's ("NHTSA") Office of Defects Investigation ("ODI"). Despite this knowledge, Nissan failed to disclose and actively concealed the Emergency Braking Defect from Class members and the public and continued to market and advertise the Class Vehicles as safe.

9. Nissan sold hundreds of thousands of Class Vehicles despite knowing that the Emergency Braking System engages suddenly and unexpectedly, posing a safety hazard to Plaintiffs, the other Class members, and others sharing the road with Class Vehicles. In fact, in 2018 alone, Nissan equipped about a million Class Vehicles with the Emergency Braking System.

10. Purchasers and lessees who have complained to Nissan about the Emergency Braking Defect have been told that their vehicle is fine and have been refused repair or any other adequate remedy.

11. The Emergency Braking Defect inhibits Plaintiffs' and the other Class members' expected, comfortable, and safe use of their Class Vehicles, and exposes them to the risk of serious injury resulting from sudden brake failure.

12. As a result of Nissan's selling and leasing vehicles with the Emergency Braking Defect, Plaintiffs and the other Class members were damaged, in that they purchased Class Vehicles that they would not have purchased, or at least paid more for their Class Vehicles than they would have paid, had they known about the Emergency Braking Defect.

## II.  Jurisdiction and Venue

13.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and (d) because Plaintiffs are citizens of different states than Defendants, there are more than 100 Class members nationwide, and the amount in controversy for the Class exceeds $5,000,000 exclusive of costs and interest.

14.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*.

15.  This Court has personal jurisdiction over Nissan NA because Nissan NA was and is incorporated in the State of California and in this district.  Moreover, Nissan NA is authorized to do business in this district and conducts substantial business in this district.  This Court has personal jurisdiction over Nissan MC because it purposefully interjected itself into California, not only by choosing to incorporate Nissan NA in California, but also by purposefully directing business in California, taking active steps to introduce its products into California, and engaging in continuous corporate operations within California due to its dealings with Nissan NA.

16.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 with respect to Nissan NA because Nissan NA resides in this district.  Additionally, Nissan NA has marketed, advertised, sold, and leased Class Vehicles within this district.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 with respect to Nissan MC because Nissan MC is not a resident of the United States and may thus be "sued in any judicial district."

## III.  Parties

### A.  Plaintiffs

#### 1.  Texas

17.  Plaintiff Vaughn Kerkorian is a citizen of Texas and a resident of Plano, Texas.  Mr. Kerkorian owns a 2018 Nissan Rogue, and was the previous owner of a 2017 Nissan Rogue.

18.  Plaintiff Kerkorian purchased a 2017 Nissan Rogue at Crest Nissan in Frisco, Texas, in July 2017.  Plaintiff Kerkorian reviewed Nissan's promotional materials regarding the vehicle and interacted with at least one sales representative at Crest Nissan, an authorized Nissan dealer.

19.     Nissan failed to disclose the Emergency Braking Defect to Mr. Kerkorian before he purchased his Rogue, despite Nissan's knowledge of the defect, and Mr. Kerkorian, therefore, purchased his 2017 Rogue with the incorrect understanding that it would be a safe and reliable vehicle. Had Mr. Kerkorian known about the Emergency Braking Defect, he would not have purchased his 2017 Rogue, or certainly would not have paid as much for it as he did.

20.     In November 2017, Mr. Kerkorian first experienced the Emergency Braking Defect. Just as he approached a set of electric train tracks in downtown Plano, Texas, the brakes on his 2017 Rogue automatically applied, and his vehicle was brought to a complete stop in the middle of the train tracks, with the engine shut off.

21.     In December 2017, Mr. Kerkorian again experienced the Emergency Braking Defect, at the same electric train tracks in downtown Plano, Texas.  Once again, his vehicle was brought to a complete stop in the middle of the tracks, with the engine shut off.

22.     After speaking with a representative at the Crest Nissan dealership where he purchased his 2017 Rogue regarding these extremely dangerous situations, the representative informed Mr. Kerkorian that it had spoken with Nissan corporate and Nissan was aware of the Emergency Braking Defect.

23.     To address Mr. Kerkorian's problem, Nissan offered to swap Mr. Kerkorian's 2017 Rogue for a 2018 Rogue that also had AEB technology.  Mr. Kerkorian would also have to pay a $1,900 usage tax.  Mr. Kerkorian accepted this purported solution.  Had Mr. Kerkorian known that the Emergency Braking Defect would also be present in his 2018 Rogue, he would not have accepted the 2018 Rogue.

24.     Mr. Kerkorian received his 2018 Rogue at Crest Nissan in July 2018.  In October 2018, Mr. Kerkorian experienced the Emergency Braking Defect in his 2018 Rogue at the same electric train tracks in downtown Plano, Texas.

25.     Nissan has since refused to provide any remedy for the Emergency Braking Defect in Mr. Kerkorian's 2018 Rogue.

**2. Massachusetts**

26. Plaintiff David Turner is a citizen of Massachusetts and a resident of Attleboro, Massachusetts. Mr. Turner owns a 2017 Nissan Rogue Sport, which he purchased new from a Nissan dealer in Massachusetts in 2018.

27. Before purchasing his 2017 Rogue, Mr. Turner reviewed Nissan's promotional materials regarding the vehicle and interacted with at least one sales representative at an authorized Nissan dealership.

28. Nissan failed to disclose the Emergency Braking Defect to Mr. Turner before he purchased his Rogue, despite Nissan's knowledge of the defect, and Mr. Turner, therefore, purchased his Rogue with the incorrect understanding that it would be a safe and reliable vehicle. Had Mr. Turner known about the Emergency Braking Defect, he would not have purchased his Rogue, or certainly would not have paid as much for it as he did.

29. Within weeks after his purchasing the vehicle, Mr. Turner's 2017 Rogue began experiencing the Emergency Braking Defect. Mr. Turner has most commonly experienced the Emergency Braking Defect in parking garages, where his brakes lock up, suddenly and forcefully, as he approaches an up ramp.

30. Mr. Turner has made his Nissan dealer aware of the Emergency Braking Defect but has not been provided any effective remedy.

**B. Defendants**

31. Defendant Nissan NA is a California corporation with its principal place of business in Franklin, Tennessee. Nissan NA engages in the design, manufacturing, advertising, and marketing of Nissan automobiles, including the Class Vehicles. It markets and sells the Class Vehicles nationwide, including in California, Texas, and Massachusetts.

32. Defendant Nissan MC is a Japanese corporation headquartered in Yokohama, Japan. Nissan MC is the parent corporation of Nissan NA and designs, manufactures, distributes, markets, and sells Nissan automobiles.

33. Upon information and belief, Nissan MC communicates with Nissan NA concerning virtually all aspects of the Nissan vehicles it distributes within the United States. At all relevant times,

1   Nissan NA acted as an authorized agent and/or alter ego of Nissan MC while performing activities

2   including, but not limited to, advertising, warranties, warranty repairs, dissemination of technical

3   information, and monitoring the performance of the Class Vehicles in the United States.

4   **IV.**   <u>**Factual Allegations**</u>

5   **A.**   **The Presence of the Emergency Braking Defect in the Class Vehicles**

6       34.   The Class Vehicles suffer from the Emergency Braking Defect, which results in the

7   Emergency Braking System suddenly and unexpectedly engaging, bringing the Class Vehicles to a halt

8   wherever they may be.

9       35.   Nissan introduced its Emergency Braking System as an optional feature in its model

10   year 2015 Murano.[1]

11      36.   Initially, Nissan called its Emergency Braking System "Forward Emergency Braking."

12   From model year 2015 through model year 2017, Nissan offered its Emergency Braking System as an

13   optional feature on numerous models, including the Rogue, the Altima, and the Maxima.[2]

14      37.   For the 2017 model year Rogue, Nissan introduced a series of mid-year enhancements,

15   which included standard Forward Emergency Braking, Around View Monitor and Moving Object

16   Detection (all functions under Nissan's Intelligent Safety Shield Technologies umbrella).[3]

17      38.   For the 2018 model year, Nissan re-branded Forward Emergency Braking as "Automatic

18   Emergency Braking."[4]   Nissan also made it standard on seven of its most popular models: Rogue,

19

20

21   _____

    [1] *See* "2015 Nissan Murano – Forward Emergency Braking System (if so equipped)," available at
    https://www.youtube.com/watch?v=J-qiiVMReLw

22

23   [2] *See, e.g.,* "2016 Nissan Maxima – Forward Emergency Braking System (if so equipped)," available at
    https://www.youtube.com/watch?v=SAQ7XwL2wm0;

24   "2017 Nissan Altima – Forward Emergency Braking System (if so equipped)," available at
    https://www.youtube.com/watch?v=FfGcJQJk_DYl; "2017 Nissan Rogue – Forward Emergency Braking System (if so
    equipped)," available at  https://www.youtube.com/watch?v=N6AukjeuGTA.

25

26   [3] *See* "2017.5 Nissan Rogue Press Kit," available at <u>https://nissannews.com/en-US/nissan/usa/presskits/us-2017-5-nissan-rogue-press-kit</u> and "Nissan Intelligent Safety Shield Technologies," available at  https://www.nissanusa.com/experience-nissan/news-and-events/car-safety-features-technology.html

27   [4] *See* "Nissan to Offer Standard Automatic Emergency Braking (AEB) on One Million U.S. Vehicles in 2018 Model Year,"
    available at https://nissannews.com/en-US/nissan/usa/releases/nissan-to-offer-standard-automatic-emergency-braking-aeb-
    on-one-million-u-s-vehicles-in-2018-model-year?mode=print

28

Rogue Sport, Altima, Murano, LEAF, Pathfinder, Maxima, and Sentra (except manual-transmission equipped and all NISMO versions).[5]

39.    Based on the uniformity of experiences with the Emergency Braking Defect across models and model years, as further detailed below, it is evident that there is no material difference in the Emergency Braking Systems in the Class Vehicles with respect to the Emergency Braking Defect.

40.    As advertised by Nissan, its Emergency Braking System "uses radar technology to monitor a vehicle's proximity to the vehicle ahead, giving the driver audible and visual display warnings to help the driver reduce the vehicle's speed if a potential frontal collision is detected.  If the driver fails to respond, the AEB system can apply the brakes, helping the driver to avoid the collision or reduce the speed of impact if it is unavoidable."[6]

41.    In addition to Radar, Nissan's Emergency Braking System's "technology processes the images captured by the front camera and detects the environment surrounding the vehicle, such as the road, other vehicles and pedestrians."[7] Nissan additionally states that its "'[m]ulti-sensing system with front camera' interlinks with the other safety technologies installed in the vehicle. The system detects potential risks in advance and helps alert the driver so that he can take action to help avoid a collision."[8]

42.    Nissan, however, does not advertise or inform purchasers and lessees of the Class Vehicles that its Emergency Braking System suffers from the Emergency Braking Defect, which causes the Emergency Braking System on their vehicles to suddenly and unexpectedly engage even in the complete absence of another vehicle or obstacle on the road ahead.

43.    Based on the reports of those who have experienced the Emergency Braking Defect, as further detailed below, this defect is often experienced on railroad tracks and bridges.  Owners and lessees of Class Vehicles have found themselves stopped in the middle of railroad tracks due to the

---

[5] *See Id.*

[6] *See* "Nissan Intelligent Safety Shield Technologies," available at https://www.nissanusa.com/experience-nissan/news-and-events/car-safety-features-technology.html

[7] *See* "Multi-sensing system with front camera," available at https://www.nissan-global.com/EN/TECHNOLOGY/OVERVIEW/front_camera.html

[8] *See Id.*

CLASS ACTION COMPLAINT

Emergency Braking Defect.  Other owners and lessees of Class Vehicles have recalled experiencing the Emergency Braking Defect on highways and at high speeds.

44.     The Emergency Braking Defect poses a clear and significant safety risk to Class Vehicle occupants because it can unexpectedly render the Class Vehicles helplessly at risk of a side-on collision on train tracks or in an intersection, because it puts the Class Vehicles at a heightened risk of being rear-ended (including at high speeds), and because it can prevent the Class Vehicles from moving out of the way of danger.

45.     Moreover, as further detailed below, owners and lessees of Class Vehicles, like Plaintiffs, experience the Emergency Braking Defect at inordinately low mileages, further evidencing the fact that it is a fundamental and uniform defect across the Class Vehicles.

**B.      Nissan Knew of the Emergency Braking Defect Prior to Sale or Lease of the Class Vehicles**

46.     On information and belief, Nissan learned of the Emergency Braking Defect at least as early as 2016, and certainly well before Plaintiffs and Class members purchased or leased their Class Vehicles, through sources such as pre-release evaluation and testing; early consumer complaints made directly to Nissan, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Nissan dealers; as well as through other internal sources unavailable to Plaintiffs prior to discovery.

47.     During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles, Nissan necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's Emergency Braking Systems, particularly the basic engineering principles behind the function of the systems and the systems' responses to expected conditions they would encounter in ordinary use.

48.     An adequate pre-release analysis of the design, engineering, and manufacture of the Emergency Braking Systems in the Class Vehicles would have revealed to Nissan that the systems were defective and caused vehicles to suddenly and unexpectedly stop during normal driving events, such as when vehicles encountered train tracks, manhole covers, storm drains, or inclines.

49.     Further, consumers complain of experiencing the Emergency Braking Defect at low mileages, within the warranty period.  Upon information and belief, Nissan collects, reviews, and analyzes detailed information about warranty claims made at its dealerships and service centers, including the type and frequency of such claims.  Complete data on such claims is exclusively within Nissan's control and unavailable to Plaintiffs without discovery.

50.     Online resources reveal that consumers complained to Nissan about the Emergency Braking Defect starting with, at least, model year 2016 vehicles, and that these complaints have continued unabated through the present day.

51.     For example, online complaints available through National Highway Traffic Safety Administration state the following:

- **2016 Nissan Altima, Incident Dated October 1, 2016**

  "The contact owns a 2016 Nissan Altima.  While driving various speeds, the Forward Emergency Braking warning indicator illuminated and caused the vehicle to slow down and then stop.  The contact took the vehicle to a dealer, but there was no resolution for the issue with the emergency brake.  The manufacturer was notified of the issue.  The failure mileage was 7,259."

- **2016 Nissan Rogue, Incident Dated July 2, 2018**

  "The vehicle automatically applies the brake in some instances . . . Service has had the entire body control module replaced, but electrical issues still persist.  Multiple dealers have not been able to recreate the problem even though issues are still present.  Significant safety hazard by vehicle automatically applying brake randomly and Nissan still does nothing to resolve the issue."

- **2017 Nissan Rogue, Incident Dated August 30, 2017**

  "ABS braking system goes on when driving car for no apparent reason.  No other cars or obstacles around.  This has happened 7 times.  Speed usually between 30/35 MPH."

- **2017 Nissan Rogue, Incident Dated October 11, 2017**

  "On October 11, 2017, the vehicle's [Emergency Braking System] caused the vehicle to unexpectedly brake while moving at approximately 65 mph on the interstate 10 freeway.  This malfunction nearly caused a serious accident which could have resulted in serious injuries.  We immediately contacted the Nissan dealer and they did have the vehicle towed to their service

department for inspection.  They have had the vehicle for approximately 1 week and are now contacting us requesting that we pick up the vehicle, despite the fact that they have not repaired the vehicle . . . ."

- **2017 Nissan Rogue, Incident Dated October 18, 2017**

"The first time the vehicle malfunctioned, I was driving in a grocery store parking lot with a personal friend and suddenly the car's emergency brake protection activated, jolting the car to a stop.  The second occurrence was in a parking deck (different from the first location) and the car again activated the emergency brake protection system, jolting the car to a stop.  I then felt this was a safety issue and brought this into the Nissan dealership.  They checked the car and called reporting they could not find anything wrong with the car and I should pick it up.  I picked the car up and continued to drive it until I switched cars with a personal friend who used the car to drive one mile back to home down a 4 lane road.  Upon coming to an intersection, she reports she began slowing down and got in a turn lane to make a left onto our neighborhood road and as she was approaching the light, the car activated the emergency braking system, again jolting the car to a stop.  She states during and after the car came to a complete stop, she kept her foot on the break the entire time and while decompressing the brake, the car then jolted forward crashing into the car in front of her.  I had the car towed in to the Nissan dealership and had corporate Nissan step in to investigate the car.  6 weeks later they investigated the car reporting that no error was found with the car and again I should pick up my vehicle.   I requested specific tests and asked the testing process for the car and was advised by the investigation department that they could not disclose that information and that the testing and results were 'property of Nissan' and that they were not offering any further assistance."

- **2017 Nissan Rogue, Incident Dated October 26, 2017**

"On 10-26-2-17 while traveling at approximately 35 mph the vehicle's Forward Emergency Braking System (FEB) suddenly and unexpectedly activated, bringing the car to a full and complete stop in the middle of the road. . . . There were no adverse conditions, obstructions, or vehicles within a dangerous distance to have caused the activation. . . . I returned the vehicle to the dealership were I purchased the car.   After four days of diagnostic and road testing I was told

that according to Nissan Tech Line, since the dealership was unable to duplicate the malfunction during the test drive the car is considered operational and safe and could be returned to the customer . . . ."

- **2017 Nissan Rogue, Incident Dated January 28, 2018**

"A second totally unnecessary deployment again occurred, this time @ 8:43 AM.  I was again on the Southbound Major Deegan expressway . . . speed 52 MPH with the cruise control engaged, when the Forward Emergency Brake System automatically deployed, for about 2 to 3 seconds.  Again, there was no car immediately in front of me; no debris on the roadway; nothing that would alert the sensor."

- **2017 Nissan Rogue, Incident Dated February 8, 2018**

"(FEB) Forward Emergency Braking System Faulty.  I have filed another claim before this but there has been more development and answers to the unknown as to why it is doing this.  I spoke to Nissan's arbitration dept last night and they have found that it is some traffic lights that are causing an interference and causing this system to set off audible beep followed by a red light (according to user manual it is the FEB emergency warning indicator).  It will then brake on its own. . . . I am still fighting with Nissan, but as of last night, they said Nissan had no interest in replacing or letting me repurchase at this time . . . ."

- **2018 Nissan Rogue, Incident Dated April 23, 2018**

"The emergency braking engages without reason.  This has led to 2 near misses.  Once the car just stopped in the road.  I thought it might have misinterpreted a snow pile.  Then, driving over a train crossing, the car just stopped.  Luckily I was able to get it moving before a train came.  Very scary!  When I called the service department, they were not very concerned."

- **2017 Nissan Maxima and 2018 Rogue, Incidents Dated May 28, 2018 and prior**

"The problem began in my 2017 Nissan Maxima.  I told the dealership that the emergency automatic braking system initiated while no other cars were around.  They traded me in to the 2018 Nissan Rogue and the same issue has occurred 3 times in this vehicle.   Each time, there were no other vehicles around.  The dealership claimed there is nothing wrong with my vehicle.  It wasn't until I contacted corporate that they admitted they know there's a defect, but no fix was

available yet.  They knowingly jeopardized my infant son's safety and lied to me.  This defect is scary and shouldn't be allowed to be swept under the rug by dealerships.  I no longer feel safe driving with Nissan."

- **2018 Nissan Rogue, Incident Dated July 2, 2018**

  "Forward Emergency Braking System engages while approaching a metal roadway surface and comes to a complete and abrupt stop.  The roadway is a driveway on a private property.  This vehicle is equipped with a safety system designed to prevent collisions with objects ahead, but engages when there is no object in front.  The dealership has been aware of this issue since July 5, 2018 and the manufacturer has been aware since July 26, 2018.  In several instances, motorist travelling behind were unexpectedly surprised and forced to take evasive maneuvers to avoid collision."

- **2018 Nissan Rogue, Incident Dated September 24, 2018**

  "The contact stated that the vehicle's automatic braking feature independently activated while the vehicle was being driven at various speeds.  There were no obstacles in the vehicle's path.  The failure occurred without warning on approximately six occasions. . . . The failure mileage was approximately 1,600."

- **2018 Nissan Rogue, Incident Dated September 30, 2018**

  "Auto emergency braking is activating when there is no vehicle or obstacle in front of me.  It happened the first time I left the dealer on an open highway.  It happened again in a dark parking garage, and again when I was going less than 10 miles an hour over railroad tracks.  It happened to my husband going over a bridge with metal expansion joints.  Good thing no one was behind us when it happened."

- **2018 Nissan Rogue, Incident Dated October 23, 2018**

  "While accelerating on a county street, at almost 40 MPH, my car decided to suddenly brake and almost immediately stop.  It vibrated and we heard a loud grinding type noise.  I removed my foot from accelerator, and after just a second, the braking stopped and I was able to accelerate again.  I was almost rear-ended by the car behind me.  No warning lights or sounds were heard.  The car has about 15,500 miles.  This is the second time that this has happened. . . .

I'm scared to drive this on the freeway, or actually anywhere I want to go more than 10 miles per hour . . . ."

- **2018 Nissan Rogue, Incident Dated November 13, 2018**

"While moving at 35 MPH on a paved surface street with no obstacles/cars in front of me or behind me and a green light at the next traffic light, the car made a high pitched noise and came to a full stop.  Seemed as if the emergency braking system engaged for no apparent reason.  Could have caused a rear end collision if anyone were behind me or if I were on the highway."

- **2018 Nissan Leaf, Incident Dated May 15, 2018**

"While driving forward, the vehicle suddenly, unexpectedly and violently applies the brakes without any driver input whatsoever! There are no other vehicles or pedestrians in the vicinity at the time.  This sudden braking problem began on or about 5/15/18 and happened on several occasions after that.  Twice while entering the underground parking garage at an office building and twice while driving on a city street.  Vehicle has been at the local Nissan dealer for over a week but neither the dealership nor the manufacturer apparently has any idea how to fix the problem.  They think that there is a fault in the Automatic Emergency Braking system.  The service manager told me that other instances of the same issue have been reported to Nissan. The salesperson indicated that there were 4 other similar cases at their dealership alone."

52.     As the complaints reveal, Nissan was repeatedly notified of the Emergency Braking Defect by customers and dealers.  Further, federal law requires automakers like Nissan to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data.  *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).  Thus, automakers like Nissan should (and do) monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers' ongoing obligation to identify potential defects in their vehicles.

53.     The complaints, moreover, show that owners and lessees of the Class Vehicles considered the Emergency Braking Defect to be a material safety issue to the reasonable consumer.

**C.   Nissan's Inadequate Technical Service Bulletins**

54.     Nissan's knowledge of the Emergency Braking Defect is also clear from its June 8, 2018 Technical Service Bulletin ("TSB"), NTB18-041, subsequently amended on July 19, 2018 as TSB NTB18-041a.

55.     NTB18-041a addresses unexpected operation of the Emergency Braking System in 2017-18 Rogue, Rogue Sport, and Rogue Hybrid vehicles and admits that the Emergency Braking System operates unexpectedly in these vehicles.  NTB18-041a details various purported repairs for the unexpected operation of the Emergency Braking system in these vehicles, including both hardware replacement and software reprogramming, depending on the model.

56.     For certain Laser/Radar part numbers, NTB18-041a requires complete replacement of the Laser/Radar control unit; for other part numbers, the Laser/Radar control unit's software can instead be reprogrammed.

57.     Likewise, some but not all of the Intelligent Cruise Control/Advance Drive Assist System (ICC/ADAS) control units are to be reprogrammed pursuant to NTB18-041a.

58.     NTB18-041a, however, does not adequately address the Emergency Braking Defect in any of the Class Vehicles.

59.     First, NTB18-041a is not a recall, and an owner or lessee of one of the covered Rogue models must first experience the inherently dangerous Emergency Braking Defect before a repair is offered pursuant to NTB18-041a.  Thus, Nissan requires owners and lessees of covered Rogue models to risk sudden collision before it even offers the purported repair.

60.     Second, the purported fix provided in NTB18-041a is ineffective and does not remedy the Emergency Braking Defect.  This is evident from Plaintiff Kerkorian's experience.  As stated above, Plaintiff Kerkorian complained to Nissan of the Emergency Braking Defect in his 2017 Rogue. To address his complaints, Nissan ultimately offered Plaintiff Kerkorian the opportunity to trade in his 2017 Rogue (plus a cash payment) for a 2018 Rogue.  Plaintiff Kerkorian accepted this offer and received his 2018 Rogue in July 2018.  Plaintiff Kerkorian understands that his 2018 Rogue has received the repair described in NTB18-041a.  Despite this, Plaintiff Kerkorian's 2018 Rogue has exhibited the Emergency Braking Defect.

61.     Likewise, Plaintiff Turner reported the Emergency Braking Defect to his Nissan dealership in July 2018, and was assigned an incident number.  And although Plaintiff Turner has brought his vehicle into the Nissan dealership since the release of NTB18-041a, the dealership has not remedied the Emergency Braking Defect in Plaintiff Turner's vehicle.

62.     Prior to TSB 18-041a, and at least as early as February 1, 2018 Nissan also acknowledged failure of the Class Vehicles' Pedestrian Detection and Multi-sensing system's front camera in technical service bulletin NTB18-008. Here, Nissan advised authorized technicians to check for diagnostic trouble codes related to the forward camera and to adjust/calibrate or replace the camera as needed.

63.     The camera and radar interface to detect approaching objects and automatically slow class vehicles, but a failure of either system will trigger spontaneous, unnecessary and dangerous vehicle braking. This amalgamation of the multi-sensing system camera, radar and their associated hardware, which interface via software, cannot distinguish actual road obstacles from phantoms, putting occupants' safety at risk when class vehicles stop unexpectedly and needlessly.

64.     Compounding the failures of the previously listed systems, four body mounted cameras detect objects 360 degrees around the class vehicles while traveling at 6mph or below. Nissan calls this system Around View Monitor and Moving Object Detection and it also automatically slows Class Vehicles via automatic brake application.[9] These body cameras represent yet another layer of integrated autonomous systems that trigger the sudden and unexpected false braking events associate with the Emergency Braking Defect.

65.     Nissan's Automatic Emergency Braking systems are underdeveloped. They lack the resolution to distinguish objects close to the vehicle, while discarded soda cans and other metallic

---

[9] *See* "Nissan Intelligent Safety Shield Technologies," available at https://www.nissanusa.com/experience-nissan/news-and-events/car-safety-features-technology.html

objects can cause false alarms that increase the risk of accidents. They also struggle to process information fast enough for highway driving.[10]

### D.   Nissan Received Pre-Suit Notice at Multiple Times and in Multiple Ways

66.     In addition to other forms of notice, including those detailed in this Complaint, Nissan was put on notice of Plaintiff Kerkorian's claims for the Emergency Braking Defects in his 2017 and 2018 Rogues through his dealings, in 2017 and 2018, with Crest Nissan and Nissan corporate.

67.     In addition to other forms of notice, including those detailed in this Complaint, Nissan was put on notice of Plaintiff Turner's claims when he reported the Emergency Braking Defect to his Nissan dealership in 2018.

### E.   Nissan's Marketing and Concealment

68.     Upon information and belief, Nissan knowingly marketed and sold/leased the Class Vehicles with the Emergency Braking Defect, while willfully concealing the true risks posed by the Emergency Braking Systems.

69.     Nissan directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

70.     Nissan's marketing material describes the Class Vehicles as "intelligent" and as automatically deploying emergency braking to avoid a collision.

71.     In practice, the Class Vehicles are not so intelligent that they only deploy emergency braking to avoid a collision.  Nissan concealed the fact that the Class Vehicles suffer from the Emergency Braking Defect which causes the Class Vehicles to stop suddenly and unexpectedly even when there is no risk of colliding with a vehicle or pedestrian in front of the Class Vehicle.

72.     Nissan knowingly misled Class members about the true, defective nature of the Class Vehicles.  As detailed above, upon information and belief, Nissan has been aware of the Emergency Braking Defect since at least 2016, before Plaintiffs and the other Class members purchased or leased

---

[10] *See* "The Startups Trying to Revamp Automotive Radar," available at https://www.mwrf.com/systems/startups-trying-revamp-automotive-radar

their Class Vehicles, through pre-release evaluation and testing, and the numerous and consistent complaints about the Emergency Braking Defect made directly to Nissan, received through dealerships, and collected by NHTSA.

73.    In sum, Nissan has actively concealed the existence and nature of the Emergency Braking Defect from Class members since at least 2016 despite its knowledge of the existence and pervasiveness of the Emergency Braking Defect.

74.    By engaging in the conduct described above, Nissan has concealed, and continues to conceal, the Emergency Braking Defect from Class members.  If Class members had knowledge of the information Nissan concealed, they would not have purchased or leased the Class Vehicles or would have paid less to do so.

## V.    Tolling of the Statute of Limitations

### A.    Discovery Rule Tolling

75.    The causes of action alleged herein did not accrue until Plaintiffs and the other Class members discovered that their Class Vehicles contained the Emergency Braking Defect.

76.    Neither Plaintiffs nor the other Class members could have discovered through reasonable diligence that their Class Vehicles were defective within the time period of any applicable statutes of limitation.

77.    Among other things, neither Plaintiffs nor the other Class members knew or could have known that the Class Vehicles suffer the Emergency Braking Defect.

### B.    Fraudulent Concealment Tolling

78.    Throughout the time period relevant to this action, Nissan concealed from and failed to disclose to Plaintiffs and the other Class members vital information about the potentially deadly Emergency Braking Defect described herein.

79.    Nissan kept Plaintiffs and the other Class members ignorant of vital information essential to the pursuit of their claims, and as a result, neither Plaintiffs nor the members of the proposed Classes could have discovered the Emergency Braking Defect.

80.     Specifically, throughout the relevant time period, Nissan has known that Emergency Braking Systems it installed in the Class Vehicles cause the Class Vehicles to suddenly and unexpectedly stop in non-braking situations.

81.     Despite its knowledge of the Emergency Braking Defect, Nissan failed to disclose, concealed, and continues to conceal, this critical information from Plaintiffs and the other Class members even though, at any point in time, it could have done so through individual correspondence, media release, communication during routine maintenance or service, or any other means.

82.     Plaintiffs and other Class members justifiably relied on Nissan to disclose these material defects in the Nissan vehicles that they purchased or leased, as such defects were hidden and not discoverable through reasonable efforts by Plaintiffs and the members of the proposed Classes.

83.     Thus, the running of all applicable statutes of limitation have been tolled and suspended with respect to any claims that the Plaintiffs and the members of the proposed Classes have sustained as a result of the Emergency Braking Defect by virtue of the fraudulent concealment doctrine.

**C.      Estoppel**

84.     Nissan was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Class Vehicles.

85.     Nissan knowingly failed to disclose or concealed the true nature, quality, and character of the Class Vehicles for consumers.

86.     Based on the foregoing, Nissan is estopped from relying on any statutes of limitation in defense of this action.

**VI.     <u>Class Action Allegations</u>**

87.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2) and/or (c)(4), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

88.     Plaintiffs seeks to represent a class ("the Nationwide Class") defined as:

- All persons who purchased or leased a Class Vehicle (as defined herein) in the United States.

89.     Plaintiffs also seek to represent the following statewide classes ("the Statewide Classes") defined as follows:

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Texas (the "Texas Class").
- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Massachusetts (the "Massachusetts Class").

90.     Excluded from both the Nationwide and Statewide Classes are Defendants and any of their affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiffs reserve the right to modify or amend these Nationwide and Statewide Class definitions as appropriate during the course of this litigation.

91.     The Classes expressly disclaim any recovery in this action for personal injury resulting from the Emergency Braking Defect, without waiving or dismissing any such claims.

92.     This action has been brought and may properly be maintained on behalf of the Nationwide and Statewide Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

93.     **Numerosity — Federal Rule of Civil Procedure 23(a)(1).**  The members of the Nationwide and Statewide Classes are so numerous and geographically dispersed that individual joinder of all class members is impracticable.  While Plaintiffs are informed and believe that there are not less than one million members of the Nationwide and Statewide Classes, the precise number of Nationwide and Statewide Classes is unknown to Plaintiffs, but may be ascertained from Nissan's books and records, as well as records from state Departments of Motor Vehicles. Nationwide and Statewide Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

94.     **Commonality and Predominance — Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Nationwide and Statewide Class members, including, without limitation:

      a.     whether the Emergency Braking Systems in the Class Vehicles are defective;

b.      whether Nissan knew or should have known about the Emergency Braking Defect, and, if yes, how long Nissan has known or should have known of the Emergency Braking Defect;

c.      whether the defective nature of the Class Vehicles constitutes a material fact that reasonable consumers would have considered in deciding whether to purchase or lease a Class Vehicle;

d.      whether Nissan had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class members;

e.      whether Nissan omitted and failed to disclose material facts about the Class Vehicles;

f.      whether Nissan's concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class members to act to their detriment by purchasing or leasing Class Vehicles;

g.      whether Plaintiffs and Class members, if they had purchased or leased the Class Vehicles at all, would have paid less had Nissan disclosed the Emergency Braking Defect;

h.      whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

i.      whether Plaintiffs and the Class members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

j.      whether Nissan was unjustly enriched though the sale of the Class Vehicles

k.      whether Nissan should be declared financially responsible for notifying all Class members of the problems with the Class Vehicles and for the costs and expenses of permanently remedying the Emergency Braking Defect in the Class Vehicles.

95.      **Typicality — Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Nationwide and Statewide Class members' claims because Plaintiffs and the Nationwide and Statewide Class members purchased or leased Class Vehicles that suffer from the Emergency Braking Defect.  Neither Plaintiffs nor the other Nationwide and Statewide Class members would have purchased the Class Vehicles, or, alternatively, would have paid less for the Class Vehicles, had they known of the Emergency Braking Defect.  Plaintiffs and the other Nationwide and Statewide Class members suffered damages as a direct proximate result of the same wrongful practices in which Nissan

engaged.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Nationwide and Statewide Class members.

96.     **Adequacy of Representation — Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Nationwide and Statewide Classes that they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  The Nationwide and Statewide Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

97.     **Declaratory and Injunctive Relief — Federal Rule of Civil Procedure 23(b)(2).** Nissan has acted or refused to act on grounds generally applicable to Plaintiffs and the other Nationwide and Statewide Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Nationwide and Statewide Class members as a whole.

98.     **Superiority — Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Nationwide and Statewide Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Nissan, so it would be impracticable for the Nationwide and Statewide Class members to individually seek redress for Nissan's wrongful conduct.  Even if the Nationwide and Statewide Class members could afford litigation the court system could not.  Because of the relatively small size of the individual Class members' claims (compared to the cost of litigation), it is likely that only a few Class members could afford to seek legal redress for Nissan's misconduct.  Absent a class action, Class members will continue to incur damages, and Nissan's misconduct will continue without remedy.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Class treatment of common questions of law and fact

would be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

**VII.**  **Claims for Relief**

      **A.**  **Claims Brought on Behalf of the Nationwide Class**

<strong><u>COUNT 1</u></strong>

<strong>VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT</strong>

<strong>15 U.S.C. §§ 2301 <em>et seq.</em></strong>

99.  Plaintiffs incorporate by reference each allegation set forth in paragraphs 1-93.

100.  Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

101.  This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332(a) and (d).

102.  Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

103.  Nissan is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

104.  The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

105.  15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

106.  In its Limited Warranty, Nissan expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. Nissan provides the following basic coverage warranty in its 2017 Warranty Information Booklet, which upon information and belief, is substantially identical for all Class Vehicles: "The basic coverage period is 36 months or 36,000 miles, whichever comes first.  This warranty covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan . . . ."

107.     Nissan's Limited Warranty is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

108.     With respect to Class members' purchases or leases of the Class Vehicles, the terms of Nissan's written warranty and implied warranty or merchantability became part of the basis of the bargain between Nissan, on the one hand, and each Plaintiff and each of the Class members, on the other.

109.     Nissan breached the implied warranty of merchantability.  The Class Vehicles suffer from the Emergency Braking Defect, as described above, which renders the Class Vehicles unmerchantable.

110.     Nissan breached its express Limited Warranty by refusing to repair the defective Emergency Braking Systems in the Class Vehicles.  Plaintiffs presented their vehicles for repair after the Emergency Braking System in his vehicle failed, providing Nissan an opportunity to cure, and Nissan failed to repair the defects in his vehicle.

111.     Plaintiffs, individually and on behalf of the members of the proposed Nationwide and Statewide Classes, notified Defendants of the Emergency Braking Defect, and their corresponding breaches of warranty, through notice letters delivered to Defendants.  Defendants were also notified of the Emergency Braking Defect through numerous complaints filed against them directly and through their dealers, as well as through their own engineering knowledge.

112.     Further, Nissan has refused to provide an adequate warranty repair for the Emergency Braking Defect, thus rendering the satisfaction of any notice requirement futile.  As stated above, customers that have presented their vehicles for warranty repair due to the Emergency Braking Defect have not been offered any adequate repair.

113.     At the time of sale or lease of each Class Vehicle, Nissan knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Emergency Braking Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs and the other Class members resort to an informal dispute resolution

procedure and/or afford Nissan a reasonable opportunity to cure its breach of warranties is excused and thus deemed satisfied.

114.    The amount in controversy of each Plaintiff's individual claim meets or exceeds the sum of $25.  The amount in controversy in this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

115.    As a direct and proximate result of Nissan's breaches of its Limited Warranty and the implied warranty of merchantability, Plaintiffs and the other Class members have sustained damages in an amount to be determined at trial.

116.    Plaintiffs, individually and on behalf of all Class members, seek all damages permitted by law, including the diminution in value of their vehicles, in an amount to be proven at trial.

**B.      Claims Brought on Behalf of the Texas Class**

<u>**COUNT 2**</u>

**BREACH OF EXPRESS WARRANTY**

**Tex. Bus. & Com. Code §§ 2.313 and 2A.210**

117.    Plaintiff Vaughn Kerkorian ("Plaintiff" for purposes of the Texas Class's claims) incorporates by reference each allegation set forth in paragraphs 1-93.

118.    Plaintiff brings this Count individually and on behalf of the Texas Class (the "Class," for purposes of this Count).

119.    Nissan is and was at all relevant times a merchant with respect to the Class Vehicles.

120.    In its Limited Warranty, Nissan expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period. Nissan provides the following basic coverage warranty in its 2017 Warranty Information Booklet, which upon information and belief, is substantially identical for all Class Vehicles: "The basic coverage period is 36 months or 36,000 miles, whichever comes first.  This warranty covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan . . . ."

121.    Nissan's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

122.     Nissan breached its express warranty to repair defective parts in the Class Vehicles. Nissan has not repaired the Class Vehicles' Emergency Braking Defect.  Plaintiff Kerkorian presented his vehicle for repair after the Emergency Braking System in his vehicle failed, and Nissan failed to repair or replace the Emergency Braking System.

123.     Plaintiff, individually and on behalf of the other Class members, notified Defendants of the Emergency Braking Defect, and their corresponding breaches of warranty, through notice letters delivered to Defendants.  Defendants were also notified of the Emergency Braking Defect through numerous complaints filed against them directly and through their dealers, as well as through their own engineering knowledge.

124.     Further, Nissan has refused to provide an adequate warranty repair for the Emergency Braking Defect, thus rendering the satisfaction of any notice requirement futile.  As stated above, customers that have presented their vehicles for warranty repair due to the Emergency Braking Defect, including Plaintiff, have not been offered any adequate repair.

125.     The Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Nissan has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

126.     Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

127.     Also, as alleged in more detail herein, at the time that Nissan warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Nissan improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses, and had Nissan not concealed material facts, Plaintiff and the other Class members either would not have purchased or leased the Class Vehicles, or would have paid substantially less for those vehicles.

128.     As a direct and proximate result of Nissan's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 3**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**Tex. Bus. & Com. Code §§ 2.314 and 2A.212**

129.    Plaintiff Vaughn Kerkorian ("Plaintiff," for purposes of the Texas Class's claims) incorporates by reference each allegation set forth in paragraphs 1-93.

130.    Plaintiff brings this Count individually and on behalf of the Texas Class (the "Class," for purposes of this Count).

131.    Nissan is and was at all relevant times a merchant with respect to motor vehicles under Tex. Bus. & Com. Code § § 2.104 and 2A.103.

132.    Pursuant to Tex. Bus. & Com. Code § § 2.314 and 2A.212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

133.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Emergency Braking Defect, described above.

134.    Plaintiff, individually and on behalf of the other Class members, notified Defendants of the Emergency Braking Defect, and their corresponding breaches of warranty, through notice letters delivered to Defendants.  Defendants were also notified of the Emergency Braking Defect through numerous complaints filed against them directly and through their dealers, as well as through their own engineering knowledge.

135.    Further, Nissan has refused to provide an adequate warranty repair for the Emergency Braking Defect, thus rendering the satisfaction of any notice requirement futile.  As stated above, customers that have presented their vehicles for warranty repair due to the Emergency Braking Defect, including Plaintiff, have not been offered any adequate repair.

136.    Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Nissan's breach of the warranty of merchantability.

137.    As a direct and proximate result of Nissan's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

### COUNT 4

### FRAUDULENT CONCEALMENT

138.    Plaintiff Vaughn Kerkorian ("Plaintiff," for purposes of the Texas Class's claims) incorporates by reference each allegation set forth in paragraphs 1-93.

139.    Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count).

140.    Nissan was aware of the Emergency Braking Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

141.    Having been aware of the Emergency Braking Defect within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Emergency Braking Defect, Nissan had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles, and thereafter.

142.    Nissan did not disclose the Emergency Braking Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles, or thereafter.

143.    For the reasons set forth above, the Emergency Braking Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

144.    In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Nissan to disclose known material defects with respect to the Class Vehicles.

145.    Had Plaintiff and the other members of the Class known of the Emergency Braking Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

146.    Through its omissions regarding the Emergency Braking Defect within the Class Vehicles, Nissan intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

147.    As a direct and proximate result of Nissan's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Emergency Braking Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 5**

**UNJUST ENRICHMENT**

148.    Plaintiff Vaughn Kerkorian ("Plaintiff," for purposes of the Texas Class's claims) incorporates by reference each allegation set forth in paragraphs 1-93.

149.    Plaintiff brings this Count individually and on behalf of the other members of the Texas (the "Class," for purposes of this Count).

150.    Nissan has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Nissan's concealment of the Emergency Braking Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

151.    Nissan has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

152.    It is inequitable and unconscionable for Nissan to retain these benefits.

153.    Because Nissan concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Nissan's misconduct.

154.    Nissan knowingly accepted the unjust benefits of its wrongful conduct.

155.    As a result of Nissan's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**C.    Claims Brought on Behalf of the Massachusetts Class**

**COUNT 6**

**BREACH OF EXPRESS WARRANTY**

**Mass Gen. Laws ch. 106, §§ 2-313 and 2A-210**

151.    Plaintiff David Turner ("Plaintiff," for purposes of the Massachusetts Class's claims) incorporates by reference each allegation set forth in paragraphs 1-93.

152.    Plaintiff brings this Count individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

153.    Nissan is and was at all relevant times a merchant with respect to the Class Vehicles.

154.    In its Limited Warranty, Nissan expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period. Nissan provides the following basic coverage warranty in its 2017 Warranty Information Booklet, which upon information and belief, is substantially identical for all Class Vehicles: "The basic coverage period is 36 months or 36,000 miles, whichever comes first.  This warranty covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan . . . ."

155.    Nissan's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles.

156.    Nissan breached its express warranty to repair defective parts in the Class Vehicles. Nissan has not repaired the Class Vehicles' Emergency Braking Defect.  Plaintiff Turner presented his vehicle for repair after the Emergency Braking System in his vehicle failed, and Nissan failed to repair or replace the Emergency Braking System.

157.    Plaintiff, individually and on behalf of the other Class members, notified Defendants of the Emergency Braking Defect, and their corresponding breaches of warranty, through notice letters delivered to Defendants.  Defendants were also notified of the Emergency Braking Defect through numerous complaints filed against them directly and through their dealers, as well as through their own engineering knowledge.

158.    Further, Nissan has refused to provide an adequate warranty repair for the Emergency Braking Defect, thus rendering the satisfaction of any notice requirement futile.  As stated above, customers that have presented their vehicles for warranty repair due to the Emergency Braking Defect, including Plaintiff, have not been offered any adequate repair.

159.    The Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Nissan has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

160.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

161.    Also, as alleged in more detail herein, at the time that Nissan warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Nissan improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

162.    As a direct and proximate result of Nissan's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT 7

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

#### Mass Gen. Laws ch. 106, §§ 2-314 and 2A-212

163.    Plaintiff David Turner ("Plaintiff," for purposes of the Massachusetts Class's claims) incorporates by reference each allegation set forth in paragraphs 1-93.

164.    Plaintiff brings this Count individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

165.    Nissan is and was at all relevant times a merchant with respect to motor vehicles under Mass Gen. Laws ch. 106, §§ 2-104 and 2A-103.

166.    Pursuant to Mass Gen. Laws ch. 106, §§ 2-314 and 2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

167.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Emergency Braking Defect, described above.

168.     Plaintiff, individually and on behalf of the other Class members, notified Defendants of the Emergency Braking Defect, and their corresponding breaches of warranty, through notice letters delivered to Defendants.   Defendants were also notified of the Emergency Braking Defect through numerous complaints filed against them directly and through their dealers, as well as through their own engineering knowledge.

169.     Plaintiffs Turner presented his vehicle for repair after the Emergency Braking System in their vehicles failed, and Nissan failed to repair or replace the Emergency Braking System.

170.     Further, Nissan has refused to provide an adequate warranty repair for the Emergency Braking Defect, thus rendering the satisfaction of any notice requirement futile.   As stated above, customers that have presented their vehicles for warranty repair due to the Emergency Braking Defect, including Plaintiffs, have not been offered any adequate repair.

171.     Plaintiffs and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Nissan's breach of the warranty of merchantability.

172.     As a direct and proximate result of Nissan's breach of the warranty of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT 8

### FRAUDULENT CONCEALMENT

173.     Plaintiff David Turner ("Plaintiff," for purposes of the Massachusetts Class's claims) incorporates by reference each allegation set forth in paragraphs 1-93.

174.     Plaintiff brings this Count individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

175.     Nissan was aware of the Emergency Braking Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

176.     Having been aware of the Emergency Braking Defect within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Emergency Braking Defect, Nissan had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

177.    Nissan unlawfully concealed and failed to disclose the Emergency Braking Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles, and thereafter.

178.    Further, Nissan has learned more about the Emergency Braking Defect and has intentionally concealed and suppressed that information; Nissan has failed to recall the Class Vehicles or otherwise inform the Class members of the Emergency Braking Defect.

179.    For the reasons set forth above, the Emergency Braking Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

180.    In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Nissan to disclose known material defects with respect to the Class Vehicles.

181.    Had Plaintiff and the other members of the Class known of the Emergency Braking Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

182.    Through its omissions regarding the Emergency Braking Defect within the Class Vehicles, Nissan intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

183.    As a direct and proximate result of Nissan's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Emergency Braking Defect had been disclosed to them, and therefore, have incurred damages in an amount to be determined at trial.

## COUNT 9

### UNJUST ENRICHMENT

184.    Plaintiff David Turner ("Plaintiff," for purposes of the Massachusetts Class's claims) incorporates by reference each allegation set forth in paragraphs 1-93.

185.    Plaintiff brings this Count individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

186.     Nissan has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Nissan's concealment of the Emergency Braking Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

187.     Nissan has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

188.     It is inequitable and unconscionable for Nissan to retain these benefits.

189.     Because Nissan concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Nissan's misconduct.

190.     Nissan knowingly accepted the unjust benefits of its wrongful conduct.

191.     As a result of Nissan's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

## VIII.   **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Nationwide and Statewide Classes, respectfully requests that the Court enter judgment in his favor and against Defendants Nissan NA and Nissan MC as follows:

a.     an order certifying the proposed Nationwide and Statewide Classes as requested herein, including subclasses, designating Plaintiffs as named representatives of the Classes, and designating, as Class Counsel, Bursor & Fisher, P.A; Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.; DiCello, Levitt & Casey LLC; and Bailey Glasser LLP;

b.     a declaration that the Emergency Braking Systems in the Class Vehicles are defective;

c.     a declaration that Nissan is financially responsible for notifying all Class members about the defective nature of the Class Vehicles;

d.     an order enjoining Nissan from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles;

1        e.     an order requiring Nissan to recall and permanently repair the Class Vehicles,

2  within a reasonable time period and at no cost to Class members, so that they no longer have the

3  Emergency Braking Defect;

4        f.     an award to Plaintiffs and the other Class members of compensatory, exemplary,

5  and statutory damages, including interest, in an amount to be proven at trial;

6        g.     an order that Nissan must disgorge, for the benefit of Plaintiffs and the other

7  Class members, all or part of the ill-gotten profits it received from the sale or lease of the Class

8  Vehicles, or make full restitution to Plaintiffs and the other Class members;

9        h.     an award of attorneys' fees and costs as allowed by law;

10        i.     an award of pre-judgment and post-judgment interest, as provided by law; and

11        j.     such other relief as may be appropriate under the circumstances.

## IX.   DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  December 31, 2018              Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:        */s/ L. Timothy Fisher*
            L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Frederick J. Klorczyk III (State Bar No. 320783)
1990 North California Boulevard, Suite 940
Walnut Creek, California  94596
Tel: (925) 300-4455
E-Mail:  ltfisher@bursor.com
       jsmith@bursor.com
       fklorczyk@bursor.com

W. Daniel "Dee" Miles, III, *pro hac vice forthcoming*
H. Clay Barnett, III, *pro hac vice forthcoming*
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street Montgomery, Alabama 36104

Tel: (334) 269-2343
dee.miles@beasleyallen.com
clay.barnett@beasleyallen.com

Adam J. Levitt, *pro hac vice forthcoming*
John E. Tangren, *pro hac vice forthcoming*
Daniel R. Ferri, *pro hac vice forthcoming*
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Tel: (312) 214-7900
E-Mail:  alevitt@dlcfirm.com
          jtangren@dlcfirm.com
          dferri@dlcfirm.com

Benjamin L. Bailey, *pro hac vice forthcoming*
Jonathan D. Boggs, *pro hac vice forthcoming*
Michael L. Murphy*, pro hac vice forthcoming*
**BAILEY GLASSER LLP**
209 Capitol Street
Charleston, West Virginia  25301
Tel: (304) 345-6555
E-Mail:  bbailey@baileyglasser.com
          jboggs@baileyglasser.com
          mmurphy@baileyglasser.com

Daniel A. Schlanger, *pro hac vice forthcoming*
**SCHLANGER LAW GROUP, LLP**
9 East 40th Street, Suite 1300
New York, New York  10016
Tel: (212) 250-6114
E-Mail:  dschlanger@consumerprotection.net

Kim E. Richman, *pro hac vice forthcoming*
**RICHMAN LAW GROUP**
81 Prospect Street
Brooklyn, New York  11201
Tel: (212) 687-8291
E-Mail:  krichman@richmanlawgroup.com

Jeffrey Kaliel, *pro hac vice forthcoming*
**KALIEL PLLC**
1875 Connecticut Avenue NW, Tenth Floor
Washington DC  20009
Tel: (202) 350-4783
E-Mail:  jkaliel@kalielpllc.com

***Counsel for Plaintiffs and the Proposed Class***